# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

ALAN DOERING                                                                                          PLAINTIFF
ADC #106115

v.                                               5:17cv00125-DPM-JJV

WENDY KELLEY, Director,
Arkansas Department of Correction; *et al.*                                                DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D.P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## **DISPOSITION**

**I. INTRODUCTION**

Alan Doering ("Plaintiff"), formerly incarcerated at the Varner Unit of the Arkansas Department of Correction ("ADC") and now incarcerated at the Cummins Unit, filed this action *pro se* and pursuant to 42 U.S.C. § 1983. (Doc. No. 2.) He alleges Defendants have been deliberately indifferent to his serious medical needs, specifically by (1) depriving him of his HIV and blood pressure medications; (2) refusing him drug therapy for hepatitis C; and (3) refusing to renew a "no stairs" prescription.[1] (*Id*. at 4-5.) Plaintiff seeks monetary damages as well as injunctive relief – specifically, immediate hepatitis C treatment and "steps put into place" to prevent missed medications. (*Id*. at 6.)

---

[1] Plaintiff also alleged Defendants had denied him chronic care doctor visits. (Doc. No. 2 at 4.) This claim was previously dismissed without prejudice due to Plaintiff's failure to exhaust administrative remedies. (Doc. Nos. 50, 52.)

2

Defendants Wendy Kelley and Rory Griffin ("the ADC Defendants"), as well as Defendants Correct Care Solutions, Jason Kelley, Stuckey,[2] Powell,[3] and Heather Allen ("the Medical Defendants"), have filed separate Motions for Summary Judgment, contending they are entitled to judgment as a matter of law on Plaintiff's claims. (Doc. Nos. 59-61, 62-64.) Plaintiff has not responded, and these matters are now ripe for a decision. After careful review, and for the following reasons, I find both Motions for Summary Judgment should be granted and Plaintiff's claims should be dismissed.

## II. FACTS

Plaintiff has been diagnosed with HIV, hepatitis C, and high blood pressure. (Doc. Nos. 2 at 4, 63 at 3-4.) He is seen regularly in the chronic care clinic for all three issues. (Doc. No. 63 at 4.) He takes three medications for HIV and also takes a blood pressure medication. (*Id*. at 3-4.) According to the Medical Defendants, Plaintiff's relevant lab values have been below the treatment threshold for hepatitis C, which means he is followed in the chronic care clinic but does not qualify for drug therapy. (*Id*. at 2.) Plaintiff alleges he is entitled to receive a specific drug with a ninety-eight percent "cure rate" but has been denied this treatment because of its expense. (Doc. No. 2 at 4.) He claims he is suffering irreversible liver damage due to the failure to treat his hepatitis C. (*Id*.)

According to Plaintiff's Complaint, he was deprived of his HIV medications and blood pressure medication "for 4 or 5 months in a row for long periods of time." (*Id*.) Although he does not provide exact dates of his missed medications, his claims have previously been limited to those

---

[2] This Defendant's name is Ronald Stukey. (Doc. No. 9 at 1.) The Clerk is directed to amend the docket to reflect his full and correct name.
[3] This Defendant's name is Denise Powell. (Doc. No. 29 at 1.) The Clerk is directed to amend the docket to reflect her full name.

3

raised in three[4] exhausted grievances: (1) on August 25, 2016, he grieved he had been out of his blood pressure medication for eight days; (2) on October 22, 2016, he grieved he had been denied his "life saving" medication and his blood pressure medication for a week; and (3) on November 22, 2016, he grieved he had again gone over a week without his blood pressure medication and his "life saving Sustiva and other medication." (Doc. No. 43-3 at 8, 12, 18.) Plaintiff alleges the missed medications caused stress, chest pains, nausea, nightmares, loss of appetite, weight loss, headaches, and dizziness. (Doc. No. 2 at 4.) He further states missing doses of his HIV medications can cause mutation of the virus and resistance to medications, which can lead to death. (*Id.*)

Finally, Plaintiff brings his claim regarding the "no stairs" prescription against Defendant Stukey only, claiming he refused to renew it despite Plaintiff's "major knee problems, neuropathy, [and] bone splints." (*Id.* at 5.)

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

---

[4] A fourth exhausted grievance dealt with Plaintiff's desired hepatitis C treatment. (Doc. No. 43-3 at 3.)

4

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV. ANALYSIS

### A. Official Capacity Claims for Money Damages Against ADC Defendants

Plaintiff has sued Defendants in both their official and personal capacities. (Doc. No. 2 at 1-2.) His official capacity claims against the ADC Defendants for monetary damages are barred pursuant to the doctrine of sovereign immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office and, as such, is no different from a suit against the state itself, which is barred by the Eleventh Amendment unless the state has waived its immunity); *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991) (the State of Arkansas has not waived its Eleventh Amendment immunity). Accordingly, I recommend Plaintiff's official capacity damages claims against the ADC Defendants be dismissed.

### B.     All Other Constitutional Claims

The ADC Defendants contend they are entitled to qualified immunity on Plaintiff's claims against them in their personal capacities. (Doc. No. 61 at 4.) The Medical Defendants contend they are entitled to summary dismissal of all of Plaintiff's claims against them because Plaintiff did not suffer an Eighth Amendment violation. (Doc. No. 64 at 4.) Because the analysis is so closely related, I will address these arguments together. Although qualified immunity does not bar Plaintiff's claims for injunctive relief against the ADC Defendants, in either their official or personal capacities, the Eighth Amendment analysis applies to those claims. *See Grantham v. Trickey*, 21 F.3d 289, 295 (8th Cir. 1994) (noting qualified immunity does not apply to claims for equitable relief).

Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her

actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236). Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Id.*

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). A prisoner advancing an Eighth Amendment claim based on medical care must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. *Id.* at 297. Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A claim that prison officials were deliberately indifferent to a prisoner's serious medical needs has both objective and subjective components. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A plaintiff must demonstrate (1) that he suffered from objectively serious medical needs, and (2) that prison officials actually knew of but deliberately disregarded those needs. *Id.* Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. *Id.* at 104-05. However, an inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain." *Id.* at 105.

Upon review of the record in this case, I find the facts shown, construed in the light most favorable to Plaintiff, do not establish an Eighth Amendment violation.

1.     Missed Medications

As set out above, Plaintiff's exhausted claims for missed medications include three occasions on which he was out of his blood pressure and/or HIV medications for approximately one week at a time.[5]  The ADC Defendants point out they do not personally provide medical treatment or administer medications to inmates, nor do they supervise medical staff at individual units or otherwise involve themselves in the day-to-day delivery of medical care to inmates.  (Doc. Nos. 59-2 at 1, 59-3 at 3.)  And it is well settled that *respondeat superior* is not a basis for liability under § 1983.  *See, e.g.*, *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997).  In particular, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability."  *Id*. (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).  Through her Declaration, Defendant Wendy Kelley has established that she was neither involved in Plaintiff's medical care nor involved in the grievance process; particularly, she was "not involved in responding to the medical grievances that underlie Mr. Doering's claims related to . . . missed medications."  (Doc. No. 59-2 at 2.)  Additionally, her office "received no letters during the relevant time period indicating that Mr. Doering had missed any prescribed medications."  (*Id*.)  The evidence shows Defendant Wendy Kelley was unaware of Plaintiff's missed medications.  In these circumstances, as in those presented in *Keeper*, if any claim of medical indifference is to succeed, it must be brought against the individuals directly responsible for Plaintiff's medical care.  130 F.3d at 1314.

---

[5] It has previously been determined that Plaintiff did not exhaust his administrative remedies against Defendant Wendy Kelley with respect to the October 2016 and November 2016 missed medication incidents.  (Doc. No. 52.)  Therefore, the only missed medication claim remaining against Defendant Wendy Kelley is from August 2016, when Plaintiff alleges he was out of his blood pressure medication for eight days.

The record shows Defendant Griffin, on the other hand, was involved in responding to Plaintiff's grievance appeals regarding his missed medications. (Doc. Nos. 59-4, 59-5, 59-6.) A supervisor can incur liability for cruel and unusual punishment when his or her "corrective inaction amounts to 'deliberate indifference' to or 'tacit authorization' of the violative practices." *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993) (quoting *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)). Defendant Griffin, who is the ADC's Deputy Director for Health Services, argues any claim of corrective inaction against him fails. (Doc. No. 61 at 11.) The record supports his argument. In response to Plaintiff's August 2016 grievance, Defendant Griffin found the appeal to be with merit[6] and communicated his finding with the appropriate medical personnel, who instituted an "Improvement Plan." (Doc. Nos. 59-4, 59-7, 60 at 6.) By the time Defendant Griffin responded to Plaintiff's two subsequent grievance appeals, the issue had been resolved. In each instance, Defendant Griffin reviewed Plaintiff's electronic medical record and concluded Plaintiff was "now receiving [his] medications as prescribed." (Doc. Nos. 59-5, 59-6.) In his deposition, Plaintiff acknowledged the medication administration issues "stopped" once he began receiving his medications on person. (Doc. No. 59-1 at 17.) Defendant Griffin clearly took action in response to the earliest grievance regarding missed medications, and the problem was then resolved. Plaintiff cannot show Defendant Griffin was deliberately indifferent to his medication needs.

For their part, the Medical Defendants point out Plaintiff suffered no adverse effects from the delays in receiving his medications. (Doc. No. 64 at 10.) They submit the Affidavit of Jeffrey Stieve, M.D., the Regional Medical Director for Defendant Correct Care Solutions. (Doc. No. 63-

---

[6] According to the unit level response and Defendant Griffin's appeal response, the problem was that Plaintiff had been receiving his medication on person though it had been ordered not to be kept on person. (Doc. No. 59-4.)

9

3.) According to Dr. Stieve, Plaintiff's lab values were in the normal range during the relevant time period and continue to be in the normal range. (*Id.* at 5.) Upon review of Plaintiff's medical records, Dr. Stieve could find no indication of drug resistance. (*Id.*) And Plaintiff did not suffer a heart attack or stroke. (*Id.*) Dr. Stieve concludes "there was no adverse affect on Mr. Doering's prognosis as a result of any alleged delay." (*Id.*) I note Plaintiff complains of other health consequences, including stress, chest pains, nausea, nightmares, loss of appetite, weight loss, headaches, and dizziness. (Doc. No. 2 at 4.) Although these alleged adverse effects are not documented in Plaintiff's medical records (Doc. No. 63-1), it is clear the Medical Defendants could have done a more precise job in the administration of Plaintiff's medications. Still, the missed medications appear to have been caused by inadvertence on their part, and with no documented adverse effects, the missed doses can hardly be described as an unnecessary and wanton infliction of pain.[7] For these reasons, I find Plaintiff has not established a violation of his Eighth Amendment rights arising from his missed medications.

        2.        Hepatitis C Drug Therapy

Both the ADC Defendants and the Medical Defendants contend Plaintiff's claim regarding his hepatitis C treatment is merely a disagreement with his providers' treatment decisions. (Doc. Nos. 61 at 7, 64 at 7.) According to Dr. Stieve's Affidavit, Defendant Correct Care Solutions uses an algorithm for the treatment of hepatitis C. (Doc. No. 63-3 at 2.) The algorithm considers factors such as albumin levels, platelet counts, PT/INR values (which show clotting ability), prior liver biopsy history, the presence of esophageal varices, and others. (*Id.*) Because Plaintiff's relevant lab values were below the treatment threshold, he was not a candidate for drug therapy pursuant

---

[7] The Medical Defendants' point that Plaintiff did not always complete timely refill request forms is also worth noting.

to the algorithm.  (*Id*. at 2-3.)  However, Plaintiff was enrolled in chronic care for hepatitis C, where he was monitored by Defendant Stukey and others.  (*Id*. at 2.)  According to Dr. Stieve, "medical monitoring by taking periodic lab values is appropriate medical care" in such cases, because a number of patients become virus-free without medical intervention and, for those who do not, decades elapse between exposure to the virus and the acute need for treatment.  (*Id*. at 3.)

It is well settled that inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment.  *Dulany*, 132 F.3d at 1239.  A showing of deliberate indifference requires more than mere disagreement with treatment decisions.  *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).  This rule has been applied to demands, like Plaintiff's, of drug therapy for hepatitis C.  *See, e.g.*, *Pennington v. Kelley*, 2009 WL 3010912, at 3-4, 5:08CV00018-JLH-BD (E.D. Ark. Sept. 16, 2009) (where plaintiff's hepatitis C was regularly monitored in chronic care, his assertion that anti-viral treatment should have started earlier was merely a disagreement with treatment decisions).  Plaintiff's claim for a specific hepatitis C treatment – a pill he contends has a ninety-eight percent "cure rate" – amounts to a disagreement with treatment decisions where his condition is being and has been monitored.

Additionally, Dr. Stieve opines Plaintiff "has been appropriately treated, utilizing the Hepatitis C algorithm."  (Doc. No. 63-3 at 3.)  "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."  *Dulany*, 132 F.3d at 1240.  For these reasons, Plaintiff cannot establish a violation of his Eighth Amendment rights stemming from the refusal to provide drug therapy for his hepatitis C.

3. "No Stairs" Prescription

Plaintiff alleges Defendant Stukey refused to renew his "no stairs" prescription, although he does not specify when the prescription was ordered, when it expired, or when Defendant Stukey failed to renew it. (Doc. No. 2 at 5.) Plaintiff's medical records include a request form dated August 23, 2016, wherein Plaintiff asked for the "no stairs" prescription to be renewed. (Doc. No. 63-1 at 20.) The response noted the prescription did not expire until April 20, 2017. (*Id*.) On March 14, 2017, Plaintiff filled out another request form, stating his "no stairs" prescription would expire in a few weeks. (*Id*. at 91.) This request was "sent to provider for review." (*Id*.) According to an encounter note dated March 16, 2017, Defendant Stukey concluded a prescription renewal was "[n]ot medically indicated." (*Id*. at 94.) I have carefully reviewed Plaintiff's voluminous medical records and can find no other information pertaining to a "no stairs" prescription. But regardless of why it was ordered in the first place and why Defendant Stukey declined to renew it, the record indicates Plaintiff suffered no harm. He testified in his deposition he had never been given a housing assignment on any tier other than the first tier. (Doc. No. 63-2 at 73.) And although he claimed he still could have been moved "at any time" because he did not have a prescription, that "[f]ortunately" did not happen to him. (*Id*. at 74.) Accordingly, Defendant Stukey's refusal to renew the prescription does not amount to an Eighth Amendment violation.

C. **State Tort Claims**

In addition to his Eighth Amendment claims, Plaintiff alleges the denial of drug therapy for his hepatitis C and his missed medications also amount to negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. (Doc. No. 2 at 4.) Pursuant to 28 U.S.C. § 1367(c)(3), a court may decline to exercise supplemental jurisdiction over a related state law claim if it has dismissed all claims over which it has original jurisdiction. Because

Plaintiff's § 1983 claims should be dismissed, the Court should decline to exercise supplemental jurisdiction over his state law claims. *See Am. Civil Liberties Union v. City of Florissant*, 186 F.3d 1095, 1098-99 (8th Cir. 1999) (explaining that when state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law as a matter of comity).

**V.     CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that:

1.     The Clerk amend the docket to reflect the full and correct names of Defendants Ronald Stukey and Denise Powell. (Doc. Nos. 9 at 1, 29 at 1.)

2.     The ADC Defendants' Motion for Summary Judgment (Doc. No. 59) and the Medical Defendants' Motion for Summary Judgment (Doc. No. 62) be GRANTED.

3.     Plaintiff's remaining claims be DISMISSED WITH PREJUDICE, except that his state law claims be DISMISSED WITHOUT PREJUDICE.

4.     Plaintiff's Complaint (Doc. No. 2) be DISMISSED.

5.     The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 27th day of March, 2018.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE